UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS MENDHEIM, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:20-cv-02600-JMS-KMB |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITIONER'S MOTION TO VACATE CONVICTION AND
SENTENCE AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Thomas Mendheim pleaded guilty to one count of receipt of a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), and was sentenced to 300 months' imprisonment. Mr. Mendheim filed a motion for relief pursuant to 28 U.S.C. § 2255 seeking to undo that plea. The Court appointed counsel to represent Mr. Mendheim and held an evidentiary hearing on the petition. For the reasons explained below, Mr. Mendheim has not shown that he is entitled to relief and the petition is denied.

**I. Legal Standard**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which

results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Procedural History

As a result of his communications and interactions with a 15-year-old girl, Mr. Mendheim was charged with one count of coercion and enticement in violation of 18 U.S.C. § 2422(b) ("Count 1"), one count of interstate transportation of a minor in violation of 18 U.S.C. § 2423(a) ("Count 2"), and one count of receipt of a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) ("Count 3"). *United States v. Mendheim*, 1:18-cr-97-JMS-DML-1. (Cr. Dkt.), dkt. 13. He agreed to plead guilty under Federal Rule of Criminal Procedure 11(c)(1)(C) to Count 3 in exchange for dismissal of Counts 1 and 2. Cr. Dkt. 33 at 1. The parties agreed to a binding sentence of at least 240 months' imprisonment and lifetime supervised release. *Id.* at 5. The Court accepted Mr. Mendheim's guilty plea in April 2019 and sentenced him to 300 months' imprisonment and lifetime supervised release in October 2019. Cr. Dkts. 36, 43, 44.

Mr. Mendheim then sought relief pursuant to 28 U.S.C. § 2255. In response to the § 2255 motion, the United States requested an evidentiary hearing to develop Mr. Mendheim's claims. Dkt. 12. The Court found that an evidentiary hearing was necessary and appointed counsel to represent Mr. Mendheim. Dkt. 18.

## III. The Evidentiary Hearing

At the hearing, Mr. Mendheim, his trial counsel Gwendolyn Beitz, and probation officer Kristine Talley testified regarding whether Mr. Mendheim asked Ms. Beitz to file a notice of

appeal and whether Mr. Mendheim was competent to enter his guilty plea. Based on the testimony and the exhibits, the Court makes the following findings of fact.

### A. Notice of Appeal

Ms. Beitz testified at the hearing that she understood the importance of a defendant's right to appeal, that she would have filed an appeal if Mr. Mendeheim had requested it, and that he never requested one. Specifically, when asked about deciding whether to appeal, she stated, "it is Mr. Mendheim's decision. It is the client's decision . . . . We appeal cases that the client requests an appeal to be started, and even if they just ask for it to be started, the appellate team starts it, begins the process." Dkt. 49 at 177:8-13. She testified as follows regarding her interaction with Mr. Mendheim:

> I do recall asking if there is anything we could do. That is not an uncommon question. Is there anything we can appeal and indicating that we had received the benefit of the C plea, and that that was a part of the, the agreement was we couldn't appeal that. The sentence was within the range. The plea was accepted, and he had waived his right.

*Id.* at 175:12-17. She testified that after she explained to him her opinion that he did not have a basis for an appeal, he did not direct her to file a notice of appeal. *Id.* at 155:14-18. She stated that if Mr. Mendheim had asked to appeal, "there would have been letters going out from the appellate team and a video set up, and an appeal would have been filed." *Id.* at 176:3-5. There were no appellate records for Mr. Mendheim in her office, which meant that he had not contacted her office to request that an appeal be filed. *Id.* at 156:9-13.

Mr. Mendheim testified that he called Ms. Beitz and stated that he wanted to appeal, that she told him that he had no grounds for a direct appeal, and that he left it at that. *Id.* at 12:11-15.

Based on its evaluation of the testimony and evidence, the Court credits Ms. Beitz's testimony that Mr. Mendheim did not direct her to file a direct appeal. First, Ms. Beitz testified

clearly that she understands the importance of a defendant's right to appeal and her office's strict procedures for when a defendant requests that an appeal be filed. *See id.* at 177:8-13. In addition, the evidence at the hearing demonstrated Ms. Beitz's willingness to follow Mr. Mendheim's requests. For example, when Mr. Mendheim asked her to withdraw his plea, she responded to him in writing, providing him with relevant caselaw, and met with him. Exhibit 11. While she did not believe a motion to withdraw would succeed, she explained in her letter to him, "the decision is yours to make. I stand ready to assist you in any way I can." *Id.* at 3. In addition, at the beginning of the case, Mr. Mendheim requested a detention hearing, and Ms. Beitz pursued the hearing even though she did not believe it would be successful. Dkt. 49 at 116:20-117:1. She explained: "That is his decision." *Id.* at 117:1. Similarly, Ms. Beitz communicated a counteroffer to the government's plea agreement even though she did not believe it would be accepted. She explained she did so: "Because it is something my client has asked me to communicate as a counteroffer so I did." *Id.* at 135:13-17.

### B. Mr. Mendheim's Competency

Ms. Beitz testified that early in her representation of Mr. Mendheim, she assessed his mental health. *Id.* at 109:7-10. She explained that this is "relevant to how we can help them with the case, what services they might need, and in mitigation at sentencing." *Id.* at 109:12-13. To assess Mr. Mendheim's mental health, she reviewed his medical and mental health records. *Id.* at 159:20-24. These included notes that Mr. Mendheim had been in special education classes in school, *id.* at 160:7-10, and suffered from marginal intellectual capabilities, and weak impulse control as a teenager, *id.* at 161:21-162:10. Mr. Mendheim's records also indicated that his parents had at one time had a guardianship over him. *Id.* at 167:12-18. Ms. Beitz spoke to Mr. Mendheim's

father and did not have any indication that Mr. Mendheim was still under the guardianship. *Id.* at 167:24-25.

At their first meeting, just before Mr. Mendheim's initial hearing, Ms. Beitz explained she would have continued to look for issues related to his competency. *Id.* 110:4-7. But she did not have trouble communicating with him. *Id.* at 106:10-12. And she did speak with him about mental health and intellectual impairments as part of a screening form. *Id.* at 110:19-25. In addition, because Mr. Mendheim told her he was receiving income through Social Security, Ms. Beitz knew this raised "a flag" and she needed "to find out why and what we were dealing with there." *Id*. at 113:18-21. She made notes about "mild cognitive disability" and "states emotionally disabled" and "mentally handicapped," and she included question marks by each of these note entries because these issues merited follow-up. *Id*. at 113:8-14. At the meeting, Mr. Mendheim assisted her by providing information regarding incorrect dates listed in the Complaint, which resulted in the Complaint being corrected at the Initial Hearing. *Id.* at 106:1-9. He also assisted her by providing information she needed to complete the financial affidavit. *Id.* at 107:1-11.

Later, while preparing for a detention hearing, Ms. Beitz found his reactions to her assessment that he was unlikely to be released to be appropriate and normal responses, consistent with actual comprehension of the proceedings against him. *Id*. at 115:23:116:6.

As the case moved forward, Ms. Beitz continued to assess Mr. Mendheim's comprehension of the material she presented to him, which included information received in discovery, a discussion of the elements of the offenses charged, and what the government would have to prove. *Id*. at 120:8-121:18. She believed he understood what she told him and that he knew why she was discussing these matters. *Id*. She reviewed the plea agreement with Mendheim both in person and on video, giving her additional opportunities to assess his mental state and comprehension. *Id*. at

121:19-122:1; 122:22-126:12. Indeed, Mr. Mendheim offered corrections to the factual basis included with the plea agreement. *Id.* at 124:13-19.

Ms. Beitz and Mr. Mendheim also discussed the possible penalties he faced, including the Rule 11(c)(1)(C) provisions of the plea agreement. *Id*. at 125:8-22. She explained to him the applicable sentencing guidelines, including the fact that the guidelines "were going to likely be lower" than the floor contained in the plea agreement. *Id*. at 126:21-23. They had this discussion "many, many times." *Id*. at 127:18-19. Ms. Beitz indicated this was not unusual: "in cases where the guidelines are lower than the mandatory minimum, we have that discussion a lot." *Id*. at 127:18-25. Mr. Mendheim was angry, but she believed that Mr. Mendheim expressed a "typical amount of anger" for these types of cases. *Id.* at 159:8. She was accustomed to discussing the matter "over and over again" and she did so. *Id*. at 136:14-24.

As Ms. Beitz prepared Mr. Mendheim for the change of plea hearing, she determined Mr. Mendheim understood what she was telling him, and that any questions he had were appropriate under the circumstances. *Id.* at 140:12-25. She was not concerned that he could not understand the proceedings. *Id.* at 141:3-8.

Ms. Beitz was also present during Mr. Mendheim's interview with United States Probation Officer Kristine Talley. *Id*. at 142:10-12. She provided Ms. Talley with Mr. Mendheim's mental health and psychological records. *Id.* at 141:20-21. And she believed his responses to Ms. Talley's questions were appropriate and indicated a comprehension of proceedings. *Id.* at 142:15-22. Ms. Talley also testified regarding this interview. She stated that Mr. Mendheim "provided quite a bit of information," *Id.* at 183:13-16, including information about his mental health, educational history, and people Ms. Talley should speak with about him. *Id*. at 183:19-25. Ms. Talley did not have difficulty communicating with Mr. Mendheim and did not question whether he understood

6

her questions or her role. *Id*. at 187:5-12. Ms. Talley testified that if she did have concerns, she would have stopped the interview. *Id*. at 187:13-21.

Finally, Ms. Beitz held multiple videoconferences with Mr. Mendheim to review the content of the PSR. *See* Ex. 1 (timesheet documenting meetings). For example, Ms. Beitz testified about a July 11, 2019, video conference with Mr. Mendheim during which he acknowledged having reviewed the PSR and expressed his anger over its contents. *Id*. at 142:23- 143:15. Mr. Mendheim was angry with facts stated in the PSR that "characterized him or made him look in a way that he didn't think was flattering." *Id.* at 145:18-20. Ms. Beitz testified this was typical of these cases. *Id*. at 146:3-5. Ms. Beitz reviewed the PSR with Mr. Mendheim and explained the difference between facts that were inaccurate and facts that were frustrating to read: "We had to go through each line and ask is it factually true, even if it is just a frustrating fact because we can agree to a factually accurate even if they are frustrating." *Id.*  at 145:18-23. Though frustrated, Mr. Mendheim understood. *Id*. at 145:24-25.

Furthermore, Mr. Mendheim provided Ms. Beitz an opinion of the Seventh Circuit Court of Appeals that he believed helped his cause and asked her to investigate it. *Id*. at 144:6-9. While the opinion was legally unhelpful to Mr. Mendheim, it was not completely irrelevant or inappropriate under the circumstances. *Id*. at 145:5-11. And, when Ms. Beitz explained why, under the law, the case would be unhelpful, Ms. Beitz believed Mr. Mendheim understood her reasoning. *Id*.

### IV. Discussion

Mr. Mendheim raised the following claims for relief in his § 2255 motion: (1) Ms. Beitz failed to file a notice of appeal despite Mr. Mendheim's request; (2) Ms. Beitz failed to request a competency evaluation for Mr. Mendheim; (3) his guilty plea was not knowing and voluntary; (4)

7

the evidence was insufficient to support his guilty plea; (5) Ms. Beitz failed to advise him about the elements of the offense; and (6) Ms. Beitz failed to challenge Mr. Mendheim's prior conviction for sentencing purposes. *See* dkt. 18 at 2-3.

### A. Notice of Appeal

Mr. Mendheim's first claim is that he asked Ms. Beitz to file a notice of appeal on his behalf and she failed to do so. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores–Ortega*, 528 U.S. 470, 476–77 (2000). This is the case "even when the defendant has, in the course of pleading guilty, signed … an 'appeal waiver'…." *Garza v. Idaho*, 139 S. Ct. 738, 742 (2019).

Here, the Court finds that Mr. Mendheim never asked Ms. Beitz to file an appeal on his behalf. The Court credits Ms. Beitz's clear and unequivocal testimony at the evidentiary hearing that she understood the importance of a defendant's right to request an appeal and that she would have filed an appeal had Mr. Mendheim expressly requested it. Dkt. 154:24-55; 15511-13; 177:23. Further the record reflects that Ms. Beitz considered and followed Mr. Mendheim's wishes at other stages of the case. For example, when Mr. Mendheim told her he wished to withdraw his guilty plea, she advised him that such a request would not succeed but told him that "the decision is [his] to make." Exhibit 11 at 3. Ms. Beitz also requested a detention hearing on Mr. Mendheim's behalf, explaining "that is his decision." Dkt. 49 at 117:1. Finally, she communicated a counteroffer to the government's plea offer because Mr. Mendheim directed her to do so. *Id.* at 135:11-12.

The Court finds Mr. Mendheim's testimony that he asked Ms. Beitz to file a direct appeal not credible. In his first § 2255 filing, Mr. Mendheim wrote that he "asked [his] attorney to file a direct appeal but she failed to do so." Dkt. 1 at 5, 7, 8, 10. He alleged that after sentencing he was "extremely confused on what had just unfolded" and that he "questioned" his attorney "over and

8

over and stated that [he] wanted to appeal [his] sentence and also [his] conviction itself." Dkt. 1 at 16. According to Mr. Mendheim, Ms. Beitz responded "you have no grounds for appeal." *Id*.

At the evidentiary hearing, Mr. Mendheim testified that he called Ms. Beitz and stated that he wanted to appeal. He stated: "I actually called Ms. Beitz and requested that I put in a direct appeal. Another inmate was the one that told me that I could do that. I didn't even know that I could do that, and when I contacted Ms. Beitz by phone, she said that I had no grounds for direct appeal, and I just kind of left it at that." Dkt. 49 at 12:11-15. But at the sentencing hearing, the Court explained in detail Mr. Mendheim's appeal rights, including that he had the right to appeal his sentence, that he must file a notice of appeal within 14 days of the entry of judgment, and that he could request the clerk to prepare and file a notice of appeal. Cr. Dkt. 61 at 48:5-49:8. Mr. Mendheim affirmed that he understood those rights and that he did not have any questions. *Id*. Mr. Mendheim's testimony at the hearing is inconsistent with his affirmations at the sentencing hearing that he understood his appeal rights and his assertions in his § 2255 motion that he questioned Ms. Beitz "over and over" about appealing. Accordingly, the Court does not credit his testimony at the hearing.

The Court finds that Mr. Mendheim did not request that his attorney file an appeal on his behalf and therefore counsel did not perform deficiently by failing to file an appeal.

### B. Competency

Mr. Mendheim further claims that he was not competent to enter his guilty plea and that Ms. Beitz performed deficiently by failing to request a competency hearing. "A criminal defendant may not be tried unless he is competent, and he may not ... plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran,* 509 U.S. 389, 396 (1993) (citation omitted) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 468 (1938)). "The test whether a defendant is competent

9

to stand trial focuses on 'whether [the defendant] has sufficient *present ability* to consult with his lawyer with a reasonable degree of rational understanding' and whether he has 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Woodard*, 744 F.3d 488, 493 (7th Cir. 2014) (quoting *United States v. Ross*, 510 F.3d 702, 712 (7th Cir. 2004)). This standard also applies to guilty pleas. *Burt v. Uchtman*, 422 F.3d 557, 564 (7th Cir. 2005) ("the standard governing competency to plead guilty is the same as that used to evaluate competency to stand trial").

To safeguard this constitutional guarantee, a court must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Where a petitioner contends that he received ineffective assistance because his attorney failed to request a competency hearing, the prejudice inquiry asks, "whether there is a reasonable probability that the defendant would have been found unfit had a hearing been held." *Warren v. Baenen*, 712 F.3d 1090, 1100 (7th Cir. 2013) (citing *Burt*, 422 F.3d at 566 (7th Cir. 2005)). If the claim is understood to be a due process claim, "the analysis…focuses only on events that happened in court that should have alerted the trial judge to the need for a competency hearing." *Burt*, 422 F.3d at 570. A competency hearing is required only if "there is a bona fide doubt that arises as to a defendant's competency before trial." *Id.* (citing *United States v. Andrews*, 469 F.3d 1113 (7th Cir. 2006)).

"Relevant factors [regarding a defendant's competency] include any evidence of irrational behavior, the defendant's demeanor in court, and any medical opinions on the defendant's competency to stand trial." *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009). The Seventh

Circuit has also considered evidence that a defendant: (a) has been diagnosed with a severe psychiatric illness, *see, e.g., Burt*, 422 F.3d at 564-65; *McManus v. Neal,* 779 F.3d 634, 657 (7th Cir. 2015); (b) had been receiving large dosages of psychotropic medications, *see, e.g., Burt,* 422 F.3d at 565-66; *McManus,* 779 F.3d at 657; and (c) possesses substandard intelligence. *See, e.g., Newman v. Harrington*, 726 F.3d 921, 930 (7th Cir. 2013); *Burt*, 422 F.3d at 565-66.

      While Mr. Mendheim suffers from emotional and intellectual disabilities, Ms. Beitz thoroughly considered his history and his behavior and concluded at each stage that Mr. Mendheim could understand the proceedings and participate in his defense. Indeed, at their initial meeting, Mr. Mendheim assisted her by providing information regarding incorrect dates listed in the complaint and by providing information needed to complete the financial affidavit. Cr. Dkt. 49 at 106:1-107:11. And, when she reviewed the proposed plea agreement with Mr. Mendheim, he offered corrections to the factual basis. *Id.* at 124:13-19. In addition, when they discussed the potential sentence, Mr. Mendheim expressed confusion that his guideline range was likely to be lower than the statutory minimum. *Id.* at 127:7-10. But Ms. Beitz explained that this was not unusual in this kind of case and that she discussed his potential sentence with him thoroughly. *Id*. at 127:18-25. And while Mr. Mendheim was angry, she believed that Mr. Mendheim expressed a "typical amount of anger" for these types of cases. *Id.* at 159:8. Moreover, when Mr. Mendheim had an interview with Ms. Talley, the probation officer, he "provided quite a bit of information," *id*. at 183:13-16, including information about his mental health, educational history, and people Ms. Talley should speak with about him, *id*. at 183:19-25. Ms. Talley did not have difficulty communicating with him and did not question whether he understood her questions or her role. *Id*. at 187:5-12.

Based on its assessment of the testimony and evidence presented at the evidentiary hearing, the Court concludes that Mr. Mendheim understood the proceedings against him and was competent to enter his guilty plea. Further, Ms. Beitz did not perform deficiently by not asking for a competency hearing.

### C. Knowing and Voluntary Guilty Plea

Mr. Mendheim also contends that his guilty plea was not knowing and voluntary. Dkt. 1 at 19. As with his claim that he was not competent to enter his guilty plea, he contends that he suffers from intellectual deficits and mental illness and did not enter his plea with any understanding of it or its consequences. For a plea to be valid, it must be made voluntarily, knowingly, and intelligently. *United States v. Schaul*, 962 F.3d 917, 922 (7th Cir. 2020).

As the Court has already found, Mr. Mendheim was competent to plead guilty. Moreover, at the evidentiary hearing, ample evidence was presented regarding Mr. Mendheim's understanding of his guilty plea. As the Court has already explained, Ms. Beitz discussed the plea agreement with Mr. Mendheim at length and had no concern that he did not understand it. Dkt. 49 at 121:19-122:1; 122:22-126:12. Moreover, the Court discussed the plea agreement with Mr. Mendheim in detail at his change of plea hearing, advising him of his rights, cr. dkt. 55 at 11-14, and making appropriate inquiries of him to determine the knowing and voluntary nature of his plea, *id.* at 19-20; 28:14-23. Mr. Mendheim affirmed that he understood the plea agreement and its consequences. *id.* at 13:18-23. The Court concluded the plea was knowing and voluntary at the time it accepted the plea and the plea agreement. *Id.* at 29:1-8. To the extent that Mr. Mendheim contends that he did not understand the potential penalties, Ms. Beitz testified that she discussed the applicable sentencing guidelines with him, including the fact that the guidelines "were going to likely be lower" that the floor contained in the plea agreement. *Id*. at 126:21-23. They had this

discussion "many, many times." *Id*. at 127:18-19. She determined Mr. Mendheim understood what she was telling him. *Id.* at 140:12-25.

Based on its evaluation of the evidence and testimony and Mr. Mendheim's affirmations at the change of plea hearing, the Court concludes that Mr. Mendheim understood the plea agreement and that his plea was knowing and voluntary.

### D. Sufficiency of the Evidence

Mr. Mendheim also contends that there was insufficient evidence to support his guilty plea. The United States argues, among other things, that Mr. Mendheim waived this argument by pleading guilty and that, through his guilty plea, he admitted to knowingly receiving child pornography.

First, "[a] defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). Mr. Mendheim has done so here. In addition, Mr. Mendheim admitted under oath at the change of plea hearing that he committed the offense charged in Count 3. Cr. Dkt. 55 at 20:1-3. And he affirmed the facts that supported that charge. *Id*. at 20:1-3. Thus, his statement in the § 2255 motion that he did not commit the crime for which he pleaded guilty "is belied by his own statements at the change of plea hearing, which are presumed truthful." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *see Hurlow v. United States*, 726 F.3d 958, 968 (7th Cir. 2013) ("[R]epresentations made to a court during a plea colloquy are presumed to be true.") (citation and internal quotation marks omitted); *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007) ("Defendants cannot obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity."), *judgment vacated and remanded on other grounds*, 554 U.S. 911 (2008).

13

Accordingly, Mr. Mendheim has not shown that there was insufficient evidence to support his guilty plea.

### E. Advice Regarding the Elements of the Receipt of Pornography Charge

Mr. Mendheim also asserts that Ms. Beitz failed to advise him accurately about the elements of the receipt of child pornography charge. Dkt. 1 at 16. Specifically, he contends that he should not be held responsible for the images found in an "unallocated space" on devices recovered from his residence, because he did not "knowingly" receive the images. *Id*. at 16-17. But Ms. Beitz testified credibly at the evidentiary hearing that she went over the plea agreement in detail with Mr. Mendheim. In addition, at the change of plea hearing, Mr. Mendheim affirmed that he understood the elements of the charge. The Court specifically advised:

> If we had gone to trial on Count III, the Government would have been required to prove certain elements of that crime by proof beyond a reasonable doubt. They are listed in Paragraph 4, and they are first, that you knowingly received a visual depiction using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer; and that the production of such visual depiction involved the use of a minor under the age of 18 years engaging in sexually explicit conduct, and such visual depiction was of such minor engaged in sexually explicit conduct, and that you knew that at least one of the persons in such visual depiction was a minor under the age of 18 years, and you knew that the visual depiction was of such minor engaged in sexually explicit conduct, and that the Government must prove that you had a prior conviction under the laws of any state relating to aggravated sexual abuse or sexual abuse as defined by 18 United States Code, Section 2252(b)(1).

Cr. Dkt. 55 at 8:18-9:10. Mr. Mendheim acknowledged his understanding of these elements. *Id.* at 9:11-13. And, the factual basis supporting the plea agreement, which Mr. Mendheim admitted that he carefully reviewed and was true, provided that: "on multiple occasions over an approximately six month period, the Defendant repeatedly persuaded, induced, enticed, and coerced Minor Victim 1 [to] send him visual depictions of a minor engaged in sexually explicit conduct." Cr. Dkt. 33 at 9; Cr. Dkt. 55 at 19:23-20:3.

The Court has already found that Mr. Mendheim was competent to plead guilty. Because he agreed that the facts supporting his plea agreement were true and those facts support the charge of receiving child pornography, he is not entitled to relief on this basis.

### F. Failure to Challenge Prior Conviction

Finally, Mr. Mendheim claims that Ms. Beitz "was wrong for not challenging my prior charge because it was more than 15 years old and should not have been counted and should at the least had been objected to at sentencing." Dkt. 1 at 18. Count Three of the indictment charged Mr. Mendheim with violations of 18 U.S.C. § 2252(a) and (b)(1) and provided that he had a prior conviction "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor." Cr. Dkt. 13, ¶13. The § 2252(b)(1) charge increased his statutory minimum and maximum term of imprisonment from 5-to-20 years, to 15-to-40 years. While Mr. Mendheim asserts that his prior conviction should not have affected his sentence because of its age, he identifies no such requirement under § 2252(b)(1). Ms. Beitz cannot have been deficient where there was no viable objection. *Perez v. United States*, 286 F. App'x 328, 331-332 (7th Cir. 2008) (Failure to raise a losing argument or file a futile motion does not constitute ineffective assistance of counsel.).

### V. Conclusion

For the reasons explained in this Order, Thomas Mendheim is not entitled to relief on his § 2255 motion. There was no ineffective assistance of counsel or denial of Mr. Mendheim's rights. Accordingly, his motion for relief pursuant to § 2255 is **DENIED** and this action is dismissed with prejudice. Judgment consistent with this Order shall now issue and the clerk **shall docket a copy of this Order in No. 1:18-cr-97-JMS-DML-1**. The motion to vacate, Cr. Dkt. 63, shall also be terminated in the underlying criminal action.

## VI.  Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Mendheim has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 4/12/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel